IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CROP PRODUCTION SERVICES, INC., ) | |
| *a Delaware Corporation*, ) | |
|   ) | |
|   Plaintiff, ) | |
|   ) | |
|   v. ) | CASE NO. 1:09-CV-401-WKW [WO] |
|   ) | |
| JANICE LAYTON, *et al.*, ) | |
|   ) | |
|   Defendants. ) | |

## **ORDER**

Plaintiff Crop Production Services, Inc. ("CPS") brought this suit against Janice Layton and her son Greg Layton for alleged nonpayment of debts owed for the purchase of farm supplies under a credit agreement. (Doc. # 2.) Without conducting discovery, CPS moved for summary judgment (Doc. # 13), the Laytons opposed the motion (Doc. # 17), and CPS then filed a more extensive reply brief in support of its motion (Doc. # 18).[1]

Summary judgment should be granted only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

---

[1] After the Laytons failed to timely answer CPS's complaint, CPS moved for the entry of default and for a default judgment, pursuant to Federal Rule of Civil Procedure 55. (Doc. # 7.) Two days later, the Laytons filed their answer. (Doc. # 8.) Rule 55(c) provides that a court "may set aside an entry of default for good cause," and courts apply the same standard in cases where a motion for default is contested before its entry. *McKinnon v. Kwong Wah Rest.*, 83 F.3d 498, 503 (1st Cir. 1996). Applying the factors explained in *McKinnon* and accepted broadly in other case law, it would not be appropriate to grant the motion for a default judgment. Principally, there is no evidence that the failure to timely answer was willful or in bad faith, and CPS has not explained how it was prejudiced given the short duration of the delay. Accordingly, it is appropriate to proceed to the merits of the summary judgment issue.

56(c).  "[T]he court must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995).  A genuine factual dispute exists if "a reasonable jury could return a verdict for the non-moving party." *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999) (internal quotation marks and citation omitted).  Trial courts, however, may deny summary judgment when "there is reason to believe that the better course would be to proceed to a full trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

CPS claims that it concluded a credit agreement with Janice Layton in March 2007.  (Doc. # 13, Ex. 1.)  Greg Layton signed the agreement as guarantor of his mother's debt.  According to the second affidavit submitted by CPS's credit manager Harvey Johnson, the Laytons continued to accept delivery of products from CPS via its local agent, Pate Fertilizer, during the 2008 crop season, but never paid for the deliveries as agreed.  (Doc. # 18, Ex. A, ¶ 5.)

At the bottom of the first page of the agreement, the printed word "TERMS:" appears, followed by a line, on which is handwritten "Dec. 1, 2007."  (Doc. # 13, Ex. 1.)  According to the Laytons, this entry indicates that the credit agreement was to expire as of that date.  (Doc. # 17.)   To the contrary, CPS asserts, via Johnson's second affidavit, that this line indicates the "terms" of the credit agreement were that the Laytons would not owe any money for the supplies they bought from CPS until December 1, 2007, a date selected to

allow the Laytons to sell their crops at the end of the growing season. (Doc. # 18, Ex. A, ¶¶ 3, 7.)

In his first affidavit, Johnson further asserts that Janice Layton actually requested and was sold and billed for various agricultural supplies in May 2008. (Doc. # 13, Ex. B, ¶¶ 5-7.) In response, Ms. Layton does not specifically deny that she *received* any such supplies in the 2008 season, but avers that she never gave "'CPS' permission to charge [her] account," "requested" that CPS supply products, "signed an agreement with" CPS, or "authorized" CPS to supply her with goods in 2008. (Doc. # 17, Ex. 1.)

Perhaps by way of response to these statements, the second Johnson affidavit describes in greater detail the process through which the Laytons are said to have purchased supplies from CPS – they would not have done so directly from CPS, the affidavit says, but through Pate Fertilizer, which functioned as CPS's consignee. (Doc. # 18, Ex. A, ¶ 8.) Pate Fertilizer is said to store and sell product on behalf of CPS to customers with CPS credit accounts; the customers then are billed by and pay CPS directly. (Doc. #18, Ex. A, ¶ 8.). CPS attached invoices purporting to show that such transactions took place in summer 2008 between Pate Fertilizer, CPS, and Janice Layton.

CPS argues that Alabama precedent dictates that the defense offered by the Laytons must fail. *See Rose Manor Health Care, Inc. v. Barnhardt Mfg. Co.*, 608 So. 2d 358, 359 (Ala. 1992). The cited case is distinguishable; it involved a corporate parent divesting itself of a nursing home without informing a supplier with an existing contract that it would no

longer be liable for deliveries made to the facility under an open account. *Id*. Confusingly, the nursing home and its former operator maintained the same name even after the shift in operations. *Id*. at 360. Moreover, the defendant in *Rose Manor* did not assert, as do the Laytons, that the contract had by its own terms already expired by the time of the contested deliveries.

Given the dispute over the continued validity of the 2007 credit agreement (including whether Greg Layton would remain liable as guarantor even if Janice Layton is liable for supplies she actually obtained in 2008), the differences between the first and second affidavits of Harry Johnson, and the extremely limited discovery conducted thus far, this case is unsuitable for resolution on summary judgment at this time. "[T]here is reason to believe that the better course would be to proceed to a full trial," or at the least, fuller development of the evidence. *Anderson*, 477 U.S. at 255.

It is ORDERED that the motions for default, default judgment, and summary judgment (Docs. # 7, 13) are DENIED.

DONE this 1st day of September, 2009.

                                                 /s/   W.  Keith Watkins
                                       UNITED STATES DISTRICT JUDGE